UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-239-GWU

BETTY COUCH,                                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

**INTRODUCTION**

This is the third instance in which the plaintiff's continuing appeal has come before the undersigned.  In a September, 2002 Memorandum Opinion, Order and Judgment, the Court affirmed that portion of the administrative decision denying benefits for the period prior to March, 2000.  The other portion of the decision was remanded for further consideration twice, the last time being in September, 2004, when the Court determined that the limitations associated with certain musculoskeletal and mental conditions were not properly taken into consideration (Tr. 713-722). The case is now before the undersigned for a review of a November 18, 2005 hearing decision denying Couch's claims for Disability Insurance Benefits (Tr. 397-408).[1]

**APPLICABLE LAW**

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v.

---

[1]Additional DIB applications were filed along the way during the proceedings, and were considered in consolidation in the last final administrative decision.

Couch

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national

2

Couch

economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott

3

Couch

v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is

significant, the Commissioner may still use the rules as a framework for decision-

making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

using the term "framework" in the text of the decision is insufficient, if a fair reading

of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases,

the agency may be required to consult a vocational specialist.  Damron v. Secretary,

778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert

testimony only if the hypothetical question given to the expert accurately portrays

the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and

Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

In the final administrative decision at issue, the Administrative Law Judge

(ALJ) found that Couch suffered from dysthymia, hypothyroidism, tobacco abuse,

right shoulder tendonitis, chronic neck and low back pain secondary to degenerative

disc disease of the lumbar and cervical spine, right lateral epicondylitis, generalized

osteoarthritis, and a history of migraine headaches. (Tr. 402, 406).  He concluded

that the plaintiff could perform light level work with: (1) no climbing of ropes, ladders

or scaffolds and only occasional climbing of stairs or ramps, (2) no overhead work

with the right arm or shoulder, (3) a sit-stand option at one hour intervals, (3) no

more than occasional bending, twisting, kneeling, crouching or crawling, (4) no work

4

Couch

at heights or around concentrated industrial hazards and (5) a limitation to simple, repetitive tasks with no frequent changes in work routines, no requirement for problem solving, group or independent planning, setting of goals, or frequent interaction with the general public. (Tr. 403, 406).

Regarding the physical restrictions cited to the vocational expert (VE), new evidence added in the last period of administrative consideration strengthened the agency's case–as did the significant addition of physical restrictions in the hypothetical question given to the VE.  Another consultative examination occurred, with the examiner suggesting even fewer restrictions (Tr. 532) and a treating source appeared to state on several occasions that there were no work restrictions (Tr. 655, 658) and that the plaintiff's potential for rehabilitation was good (Tr. 683). Moreover, the hypothetical contained both non-exertional and exertional limitations, including a reference to a sit-stand restrictions noted with concern in the undersigned's last Memorandum Opinion (Tr. 720-721).  The ALJ's analysis of Couch's physical restrictions was supported by substantial evidence.[2]

The mental restrictions added were adequate as well. Treating Physician Chaney, although originally citing severe mental restrictions (Tr. 118), diagnosed mental conditions only intermittently and usually with few objective observations (e.g., Tr. 120, 127, 267-268, 268-269). Consultative Examiner Rigby, a mental

---

[2]Any argument regarding the assessment of the plaintiff's pain is rejected for the reasons stated in the defendant's brief at pp. 18-19.

Couch

health specialist (unlike Chaney), saw the plaintiff twice and both times identified the

ability to tolerate "stress and pressures" as the only ability less than "good" (Tr. 284,

538); as the plaintiff notes, "fair" (the term used for the ability to respond to stresses)

was never defined. However, in the later examination, Rigby did cite a GAF of 63

(Tr. 538), consistent with only "mild" symptoms; this would strongly negate the

plaintiff's argument about the definition of the term "fair." Physical examiners in

2003 noted no gross mental deficits. (Tr. 531, 541).  Medical Reviewer Demaree's

commentary suggests that "routine work with minimal public interaction" was

possible (Tr. 554), which was consistent with the ALJ's findings (Tr. 407).

The decision will be affirmed.

This the 4th day of April, 2007.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**